# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 18, 2024

Lyle W. Cayce
Clerk

No. 23-60248

Astrid Dariana Lopez Orellana,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Appeal from the Department of Homeland Security
Agency No. A201 427 666

Before Higginbotham, Stewart, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

The question presented here is whether the Louisiana accessory-after-the-fact statute, La. Rev. Stat. § 14:25, is a categorical match for the generic federal offense of obstruction of justice and is therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(S) permitting expedited removal of a noncitizen. Because the generic federal offense requires specific intent, and the Louisiana Supreme Court has explicitly maintained that the state statute requires only general intent, we find that it is not a match. Accordingly, we GRANT Lopez's petition for review, VACATE the final order of removal, and REMAND to the Department of Homeland Security ("DHS") for further proceedings in accordance with this opinion.

No. 23-60248

## I.

In this case, petitioner Astrid Dariana Lopez Orellana argues that she was improperly placed in expedited removal and then removed without an opportunity to challenge the legal basis of that removal order, in contravention of her due process rights. Given the nature of her challenge and the complexity of the expedited removal process, we will provide a brief overview of that process and 8 C.F.R. § 238.1(b), the regulation that governs it.

Administrative removal under 8 U.S.C. § 1228(b) authorizes DHS to order removal of some noncitizens without a hearing before an Immigration Judge ("IJ"). This includes those noncitizens who are convicted of aggravated felonies, who "shall be conclusively presumed to be deportable from the United States." 8 U.S.C. § 1228(c). The first step of an administrative removal proceeding is service to the noncitizen of the Notice of Intent to Issue a Final Administrative Removal Order ("NOI"). 8 C.F.R. § 238.1(b)(2). The NOI must allege three predicates necessary to establish that a noncitizen is eligible for administrative removal: 1) she is an alien, 2) she has not been lawfully admitted to the United States, and 3) she has a final conviction for an aggravated felony. *Id.* at § 238.1(b)(1), (b)(2)(i). A recipient also must be informed of her rights, including the right to counsel at no expense to the government, the right to rebut the charges against her, and the right to request withholding of removal if she fears persecution or torture in the country to which she would be removed. *Id.* at § 238.1(b)(2)(i).

Pursuant to 8 C.F.R. § 238.1(c)(1), a noncitizen has 10 days to respond before the Final Administrative Removal Order ("FARO") is issued and can be served on her. If the noncitizen does not file a response, or concedes removability, a DHS officer can issue the FARO, which may not be executed for 14 days without written waiver by the noncitizen. 8 U.S.C. § 1228(b)(3);

No. 23-60248

8 C.F.R. § 238.1(f)(1). If the FARO is issued and the noncitizen requests withholding relief, the DHS officer must refer the case to an asylum officer for a reasonable fear interview. 8 C.F.R. § 238.1(f)(3). If the asylum officer determines that the noncitizen has a reasonable fear of persecution or torture, the case is transferred to an IJ for withholding proceedings. *Id.* at § 208.31(e). If the asylum officer determines she does not have a reasonable fear of persecution or torture, the noncitizen may seek review from an IJ. § 208.31(g). If the IJ upholds the asylum officer's adverse determination, the FARO may be executed. *Id.*

\* \* \*

Having described the administrative removal process, we now turn to the facts of this case.

Lopez entered this country without inspection in 2019, when she and her mother arrived after fleeing from threats by the 18th Street Gang in their native Honduras. At that time, she was fifteen years old. On April 5, 2022, she was convicted of accessory after the fact to armed robbery with a firearm under LA. REV. STAT. § 14:25.[1]

On December 8, 2022, she was taken into ICE custody. This case concerns her designation as an aggravated felon and the process she was afforded after. On December 27, 2022, DHS issued a FARO, which alleged that her § 14:25 conviction rendered her removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) because it was an aggravated felony within the meaning of crime of violence, as defined by 8 U.S.C. § 1101(a)(43)(F). DHS then

---

[1] Lopez was arrested in early 2021 and placed in pretrial custody until April 5, 2022, when she pleaded guilty. The same day, she was sentenced with credit for time served, and she was on probation when she was detained by Immigration and Customs Enforcement ("ICE").

issued and served her with a NOI only after the FARO, informing Lopez that it intended to remove her.

Lopez requested withholding or deferral of removal, and on January 6, 2023 she had a reasonable fear interview with an asylum officer. The asylum officer determined that she was credible and had a reasonable fear of return to Honduras, because she and her mother had suffered persecution by the 18th Street Gang after her father had fled the gang, including the murder of her relatives and death threats left at her mother's home. On January 11, 2023, her case was referred to an IJ for proceedings in accordance with 8 C.F.R. § 208.31(e). On January 17, 2023, Lopez attended an initial hearing with the IJ.

On January 20, 2023, DHS canceled its original NOI and issued a new NOI alleging that her § 14:25 conviction was an aggravated felony relating to the obstruction of justice under § 1101(a)(43)(S), rendering her removable. The same day, it issued a new FARO on the finding that she was removable due to the obstruction of justice aggravated felony, though it did not serve her with that FARO at that time.

In immigration court on February 28, 2023, Lopez, through pro bono counsel, made an oral motion to terminate the withholding-only proceedings. In her oral motion, she attempted to challenge DHS's issuance of the revised NOI and the FARO on the same day—which, she argued, contravened procedures set out in the expedited removal regulations 8 U.S.C. § 1228(b)(1)-(2) and 8 C.F.R. § 238.1(b)(1). She also attempted to challenge DHS's failure to serve the FARO in a timely manner before referring her to proceedings in front of the IJ, also in contravention of 8 C.F.R. § 238.1 procedures. The government opposed that motion to terminate, and the IJ denied it, stating that he did not have power over DHS's internal procedures. The IJ denied Lopez's motion for reconsideration on March 14, 2023. After

No. 23-60248

Lopez was finally served with the FARO on April 10, 2023, she timely petitioned this court for review.

Lopez challenges the classification of her § 14:25 conviction as an aggravated felony and raises a due process claim. With respect to the former, she argues that the Louisiana accessory-after-the-fact statute is not a categorical match for the generic federal definition of an 8 U.S.C. § 1101(a)(43)(S) obstruction of justice felony that is accepted by the BIA and this circuit: First, she argues that the Louisiana statute requires only general intent while the federal analogue requires specific intent. Second, Lopez argues that the generic federal definition requires knowledge that a felony has occurred, while a person can be convicted under La. Rev. Stat. § 14:25 with only a "reasonable ground to believe" that a felony has occurred. Finally, Lopez contends that she suffered prejudice from DHS's failure to conduct the expedited removal process according to the guidelines set out in 8 C.F.R. § 238.1 because that failure prevented her from adequately challenging the aggravated felon designation or her removal. The government contests each of these arguments.

## II.

Under 8 U.S.C. § 1228(b), "the Attorney General [may] expedite removal of an alien who is not a lawful permanent resident and who is deportable for committing an aggravated felony." *Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 187 (5th Cir. 2013). This court has jurisdiction over final orders of removal, 8 U.S.C. § 1252(a)(1), and has treated a FARO as such, *see Valdiviez-Hernandez*, 739 F.3d at 186-88. Lopez's petition for review of the FARO is timely filed because it was received within 30 days of the date the FARO was served on her. *Ouedraogo v. INS*, 864 F.2d 376, 378 (5th Cir. 1989); *Fosu v. Garland*, 36 F.4th 634, 637 (5th Cir. 2022); 8 U.S.C. § 1252(b)(1).

No. 23-60248

Lopez challenges the classification of her § 14:25 conviction as an aggravated felony and raises a due process claim. This court generally lacks jurisdiction to review removal orders grounded in aggravated felony convictions but retains jurisdiction to consider constitutional and legal challenges to such orders. 8 U.S.C. § 1252(a)(1), (2)(C)-(D). A FARO is amenable to judicial review as to constitutional claims and questions of law. *Valdiviez-Hernandez*, 739 F.3d at 187-88; 8 C.F.R. § 238.1(h). Lopez's due process claim and her challenge to the classification of her § 14:25 conviction are thus reviewable, and they are considered de novo because they concern only questions of law. *See* 8 U.S.C. § 1252(a)(2)(D); *Rodriguez v. Holder*, 705 F.3d 207, 210 (5th Cir. 2013); *Santos-Alvarado v. Barr*, 967 F.3d 428, 439 (5th Cir. 2020).

## III.

The disposition of Lopez's due process claim turns on the disposition of her claim that her § 14:25 conviction does not render her removable, as prevailing on the latter claim could show that she was prejudiced by not being able to challenge the classification of this conviction as an aggravated felony during her administrative proceedings. *See Arteaga-Ramirez v. Barr*, 954 F.3d 812, 813 (5th Cir. 2020). Accordingly, we will begin with the question of whether the Louisiana statute under which she was convicted is an aggravated felony offense related to the obstruction of justice pursuant to 8 U.S.C. § 1101(a)(43)(S) before examining her due process claim.

## A.

To determine whether a state conviction qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43), courts use the categorical approach. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). Under this approach, a court looks not to the specific details of a noncitizen's prior conviction, but to the state statute under which she was convicted. *Id.* If the definition of the state

offense matches the "generic" federal definition of an offense, then it is said to be a "categorical" match for the offense listed in the Immigration and Nationality Act (INA). *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007) (citing *Taylor v. United States*, 495 U.S. 575, 599-600 (1990)). A court "presume[s] that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine[s] whether even those acts are encompassed by the generic federal offense." *Moncrieffe*, 569 U.S. at 190-91 (citing *Johnson v. United States*, 559 U.S. 133, 137 (2010)). "Petitioner's state conviction is thus an 'aggravated felony' under the INA only if the least of the acts criminalized by the state statute falls within the generic federal definition" of an obstruction of justice felony. *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 389-90 (2017).

If the state statute is *not* a categorical match for the generic federal offense, then the state conviction does not subject the noncitizen to removal under 8 U.S.C. § 1101(a)(43), regardless of the actual facts on which a conviction rests. *See Gonzales*, 549 U.S. at 186. However, "there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Moncrieffe*, 569 U.S. at 191 (internal quotation marks and citation omitted).

Within Title 8, Section 1101(a)(43)(S) does not define "obstruction of justice," and this court has likewise declined to define this term. *Alwan v. Ashcroft*, 388 F.3d 507, 514 (5th Cir. 2004). This court has, however, previously used the construction given by the BIA for this phrase. *See, e.g.*, *United States v. Gamboa-Garcia*, 620 F.3d 546, 549-50 (5th Cir. 2010); *Alwan*, 388 F.3d at 510.

To determine whether an offense is in "relation to obstruction of justice" in accordance with 8 U.S.C. § 1101(a)(43)(S), the BIA has looked to federal statutes located at 18 U.S.C. §§ 1501-1521, the chapter pertaining to

No. 23-60248

obstruction of justice, and considers "whether the substantive offense would be punishable under any of the provisions therein." *Alwan*, 388 F.3d at 514 (citation omitted); *see also In re Cordero-Garcia*, 27 I. & N. Dec. 652, 654 (B.I.A. 2019). The government and Lopez agree that the obstruction of justice offenses listed in 18 U.S.C. §§ 1501-1521 have as elements "(1) 'either active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice,' and (2) a '*specific intent* to interfere with the process of justice.'" *Gamboa-Garcia*, 620 F.3d at 550 (emphasis added) (quoting *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889, 893 (B.I.A. 1999)); *see also Cordero-Garcia*, 27 I. & N. Dec. at 654, 660.[2]

> The Louisiana statute, meanwhile, provides that:
>
> An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment.
>
> An accessory after the fact may be tried and punished, notwithstanding the fact that the principal felon may not have been arrested, tried, convicted, or amenable to justice.

La. Rev. Stat. § 14:25. While the statute itself is silent on what kind of intent suffices, the Louisiana Supreme Court answered this question in *State v. Chism*: "[A] person may be punished as an accessory after the fact if he aids an offender personally, knowing or having reasonable ground to believe that he has committed the felony, and has *a specific or general intent*

---

[2] Conduct may relate to the obstruction of justice even if there is no pending investigation concerning the underlying felony. *Pugin v. Garland*, 599 U.S. 600, 602 (2023).

No. 23-60248

that the offender will avoid or escape from arrest, trial, conviction, or punishment." 436 So. 2d 464, 467 (La. 1983) (emphasis added).

Another Louisiana statute defines specific and general criminal intent, as follows:

> (1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
>
> (2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.

La. Rev. Stat. § 14:10.

Lopez argues that she is not removable because the Louisiana statute sweeps wider than the federal definition of obstruction of justice accepted by the BIA and this court for two reasons. First, she argues, the Louisiana statute provides for the conviction of a person with only general intent, while the federal statute explicitly includes only those who act with specific intent. Second, Lopez argues that this court's decision in *Gamboa-Garcia* imported an "added knowledge requirement" from the federal accessory after the fact statute, 18 U.S.C. § 3, that is not present in the Louisiana statute. Because the Louisiana Supreme Court has clearly stated that § 14:25 is a general intent statute, we resolve this case on that issue and do not consider Lopez's added knowledge requirement argument.

\* \* \*

The argument put forth by Lopez is straightforward: any potential federal definition for the offense of accessory contains a "specific intent" requirement, while the Louisiana Supreme Court has consistently ruled that,

No. 23-60248

in Louisiana, it does not. As a result, the Louisiana statute criminalizes more behavior than the federal offense and it is not a categorical match. In particular, Lopez argues, in *Chism* the Louisiana Supreme Court upheld Chism's conviction on the basis of general, not specific, intent, because the court concluded that "the trier of fact could have reasonably found that he acted voluntarily and not out of fear when he aided [the felon] and that he did so under circumstances indicating that he believed that it was substantially certain to follow from his assistance that [the felon] would avoid arrest, trial, conviction, or punishment." *Chism*, 436 So. 2d at 470. The Louisiana Supreme Court's language tracked with the Louisiana Revised Statutes § 14:10 language of general, not specific, intent.

The government argues that, despite the language in *Chism* that states that a person may be punished as an accessory where she has "specific or general intent that the offender will avoid or escape from arrest, trial, conviction, or punishment," *Chism*, 436 So. 2d at 467, that language does not render the statute overbroad.

First, the government argues, in *Chism* the Louisiana Supreme Court "made clear" that its definition of general criminal intent "still requires that the defendant 'actively desired' that a felon 'avoid or escape arrest, trial, conviction, or punishment' or that the defendant 'believed that one of these consequences was substantially certain to result from his assistance.'"

The government also points to the federal accessory statute,[3] arguing that it has "the same fundamental mental state" as the Louisiana accessory statute, because it "criminalizes actions knowingly taken to interfere with the

_____

[3] For ease of access, the federal accessory statute, again, provides that "[w]hoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." 18 U.S.C. § 3.

No. 23-60248

process of justice."[4] The government contends that the federal statute and the Louisiana statute both "point[] to a nexus between the actions of the defendant, the defendant's intent, and obstruction of justice." In support of its nexus point, the government cites to *Alwan* for the proposition that a petitioner's knowledge that his refusal to testify would "impede the due administration of justice" was sufficient to show specific intent to obstruct justice for the purposes of 8 U.S.C. § 1101(a)(43)(S).[5]

The government likens the Louisiana accessory statute to a Virginia accessory-after-the-fact statute that was at issue in *Pugin v. Garland*, 19 F. 4th 437, 450-51 (4th Cir. 2021). While the government is correct that the petitioner in that case argued that the statute "fails to include the specific intent element of the Board's definition[,]" the Fourth Circuit found it "clear that Virginia accessory after the fact includes a specific-intent requirement" and therefore was a categorical match for the federal offense. *Id.* at 450-51. Indeed, in that case "the [Virginia Supreme Court] made clear that mere knowledge of another's felony and an attempt to conceal it or to frustrate an arrest could make [a defendant] guilty of other crimes, but not accessory after the fact," indicating that "the key to accessory after the fact under Virginia law is the specific intent to help the felon avoid punishment." *Id.* at 451. The Virginia statute is distinct from the Louisiana statute at issue here for two reasons: 1) the Louisiana Supreme Court has explicitly stated

---

[4] It is unclear what support this contention offers to the government's position, because Louisiana law explicitly applies to those who "know[] or hav[e] a reasonable ground to believe" that a felony has been committed, and it seems unlikely that one could "knowingly" interfere with the process of justice if she has only "a reasonable ground" to believe—but does not know—that a felony has been committed in the first place.

[5] *Alwan* was not a categorical approach case. In that case, the petitioner argued that he had not possessed the specific intent to obstruct justice when he refused to testify in front of a grand jury, and this court found that he did have specific intent. *Alwan*, 388 F.3d at 515.

that the accessory-after-the-fact statute has a general intent requirement, and 2) "knowledge of another's felony and an attempt to conceal it or to frustrate an arrest," *id.*, is behavior for which one could be convicted under the Louisiana statute.

Significantly, Louisiana courts of appeal continue to apply *Chism* and uphold convictions under § 14:25 based on findings that there was general, rather than specific intent. *See State v. Newton*, 129 So. 3d 20, 25 (La. App. 3d Cir. 2013) ("Defendant was fully aware of the felony after being apprised of it by his son. Defendant's behavior exhibited, as in *Chism,* at least the general intent to aid his son in avoiding the consequence of his actions.]"); *State v. Hall*, 875 So. 2d 996, 1003 (La. App. 5th Cir. 2004), *writ denied sub nom. State v. Barnes*, 888 So. 2d 834 (La. 2004) ("The statute requires only the general intent of the offender that the person who committed the felony will escape arrest, trial, conviction or punishment, and intent may be proven by circumstantial evidence or inferred.").

The *Chism* decision has received some critique from scholars who believe the "with the intent that he may avoid or escape" language in the statute is in-and-of-itself a statement of specific intent under Louisiana law. Among these are the authors of the Criminal Jury Instructions section of the *Louisiana Civil Law Treatise*, who provide the following sample jury instructions for accessory after the fact:

> [I]n order to convict the defendant of being an accessory after the fact, you must find:
> (1) that [*person*] committed [*felony*]; and
> (2) that the defendant knew or had reasonable ground to believe that [*person*] committed [*felony*]; and
> (3) that the defendant [harbored, aided, concealed] [*person*] [by [*describe manner in which the person was harbored, etc., if alleged*]]; and

No. 23-60248

(4) that the defendant acted with a specific [general] intent that [*person*] avoid or escape from [arrest, trial, conviction or punishment].[6]

17 La. Civ. L. Treatise, Criminal Jury Instructions § 10:1 (3d ed. 2012). In their comments, the authors note that they:

> drafted the instruction in light of the comments to La. R.S. 14:11 which clearly indicate that the expression "with the intent" refers to specific as opposed to general criminal intent. However, in *State v. Mitchell*, 337 So. 2d 1189 (La. 1976) and in *State v. Chism*, 436 So. 2d 464 (La. 1983), in reviewing the sufficiency of evidence to sustain an accessory conviction, the Supreme Court said that only general criminal intent is required by La.R.S. 14:25. Since a general intent is present when the offender has a specific intent, the specific intent instruction is recommended and does not prejudice the defendant. *See* La.R.S. 14:10(2). The authors feel that the Supreme Court may change its position in *Mitchell* and *Chism* if the issue were directly presented.

*Id.*; *see also* André Doguet, Comment, *The Louisiana Criminal Code and Criminal Intent: Distinguishing Between Specific and General Intent*, 46 La. L. Rev. 1061, 1067 (1986) ("The court's interpretation of the statute is flawed.").

However, *Chism* is the law in Louisiana, and cases like *Hall* and *Newton* demonstrate that its general intent requirement is still relevant. *See Newton*, 129 So. 3d at 25; *Hall*, 875 So. 2d at 1003. And, as the categorical

---

[6] The government provides, in its analysis of the Louisiana statute, a citation to what it purports to be the jury instructions from the same source cited here. It omits the fourth element and replaces it with "the defendant actively desired for the perpetrator to avoid or escape from arrest, trial, conviction, or punishment." This version of the jury instructions does not appear at the citation on either Westlaw or LexisNexis; additionally, a search on those databases and Google for "the defendant actively desired for the perpetrator to avoid" yielded no results at all.

approach cautions us, a "[p]etitioner's state conviction is . . . an 'aggravated felony' under the INA only if the least of the acts criminalized by the state statute falls within the generic federal definition" of an obstruction of justice felony. *Esquivel-Quintana*, 581 U.S. at 389-90. The categorical approach does not provide an exception simply because some scholars conclude that a state supreme court was incorrect, or that it probably did not mean what it stated it meant. The Louisiana Supreme Court "is the ultimate arbiter of the meaning of the laws of this state." *Succession of Harlan*, 250 So. 3d 220, 223 (La. 2018) (citations omitted). This court will not override the Louisiana Supreme Court's statement of Louisiana law by ruling that § 14:25 is *effectively* a specific intent statute.

Having determined that La. Rev. Stat. § 14:25 is not a categorical match for the federal obstruction of justice statute, we now move to Lopez's due process claim.

B.

"It is clearly established that the Fifth Amendment of the United States Constitution entitles aliens to due process of law in deportation proceedings." *Anwar v. INS*, 116 F.3d 140, 144 (5th Cir. 1997) (citations omitted). "Due process challenges to deportation proceedings require an initial showing of substantial prejudice." *Id.*; *see also Ogunfuye v. Holder*, 610 F.3d 303, 307 (5th Cir. 2010). This court has held that "if INS complied with the statutory mechanism" of 8 C.F.R. § 238.1 when deporting a noncitizen, "such deportation complies with the standards of due process." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999).

Lopez points to four specific actions by the DHS that she argues violated her due process rights in ways that prejudiced her: 1) issuing the initial FARO before the NOI; 2) cancelling the NOI and reissuing a new NOI and FARO on the same date; "3) reading documents to Ms. Lopez in English

instead of Spanish[;] and 4) serving the FARO four months after the NOI preventing her from contesting the NOI." Most important, Lopez argues, were DHS's issuance of the FARO and the NOI on the same day without giving her the opportunity to respond to the NOI, and DHS's failure to serve the FARO in a timely manner.

According to Section § 238.1:

The alien has ten calendar days to file a written response to the Notice of Intent. 8 C.F.R. § 238.1(c)(1). In response, an alien may designate a country of removal; rebut the allegations supporting the charge; request to review the Government's evidence supporting the charge; request an extension of time to respond; and request withholding of removal under the Convention Against Torture (CAT). *Id.* If the alien does not timely rebut the charges, a DHS officer issues a FARO and the alien may be removed fourteen days after issuance of that order. *Id.* § 238.1(d)(1).

*Valdiviez-Hernandez*, 739 F.3d at 187; *see also Gomez-Velazco v. Sessions*, 879 F.3d 989, 992 (9th Cir. 2018) ("To allow an opportunity for judicial review, the order may not be executed for 14 days unless you waive that waiting period in writing."); 8 U.S.C. § 1228(b)(3); 8 C.F.R. § 238.1(f)(1). And, if the individual requests withholding of removal upon being served with the NOI, "the deciding officer shall, upon issuance of a Final Administrative Removal Order, immediately refer the alien's case to an asylum officer to conduct a reasonable fear determination." 8 C.F.R. § 238.1(f)(3).

Similarly, a noncitizen cannot seek review of their FARO in this court until they have been served with the FARO. "Part of the regime governing review of removal orders is that the 30-day period for filing a petition does not commence until the agency properly serves the alien with the order." *Villegas de la Paz v. Holder*, 640 F.3d 650, 654 (6th Cir. 2010)*; see also Ouedraogo*, 864 F.2d at 378 ("[T]he time for filing a review petition begins to

run when the BIA complies with the terms of federal regulations by mailing its decision to petitioner's address of record.")

Any reading of the facts here shows that DHS did not follow the procedures that are designated under Section 238. These failures were a violation of Lopez's due process rights. *See Cardoza Salazar v. Barr*, 932 F.3d 704, 709 (8th Cir. 2019) ("DHS issued the FARO on the same day it provided the requested evidence to [petitioner's] attorney. This violated the above-cited regulation and denied [petitioner] the opportunity to rebut the government's position with arguments and evidence. This was a fundamental procedural error and violated [petitioner's] due process rights."); *cf. Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1245 (10th Cir. 2012) (finding that DHS improperly issued a FARO and NOI on the same day, but that petitioner's due process rights were not violated because he sought only discretionary relief and "*never* has contested that he (1) is an alien; (2) has not been lawfully admitted for residency; (3) has been convicted of an aggravated felony (and that conviction is final); and (4) is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii).").

The government does not contend that it did follow these procedures, other than to note that Lopez "was provided [reasonable fear] proceedings and the record shows she was afforded ample opportunity to present a claim for protection from removal in those proceedings." Instead, the government's primary argument is that, because her Louisiana conviction constitutes an aggravated felony and she accordingly would have been precluded from standard removal proceedings under 8 U.S.C. § 1229(a), Lopez cannot make the "initial showing of substantial prejudice" that is required under *Anwar*. Further, the government argues, Lopez's withdrawal of her withholding-only application undermines her due process claim.

No. 23-60248

But the first argument fails because Lopez's conviction does not fall under the aggravated felony definition, and the second misstates the harm of which Lopez complains. Lopez never asserts she was not given the chance to present "a claim for protection" in the form of withholding-only proceedings. Lopez complains that the issuance of the second NOI and the second unserved FARO on the same day, while she was already in withholding-only proceedings pursuant to the first unserved FARO, deprived her of her right to challenge the underlying premise of the second FARO—that her Louisiana conviction constituted an aggravated felony and thus rendered her deportable—and prematurely resigned her to the withholding-only process when she would have otherwise been eligible for other relief.

Because DHS placed her in withholding-only proceedings *before* the government issued the relevant NOI and FARO, and failed to timely serve the FARO, Lopez faced a catch-22. She could either (1) remain in withholding-only proceedings without challenging DHS's aggravated felony determination, with DHS ready to execute the FARO—and remove her immediately—if those withholding-only proceedings concluded negatively, or (2) withdraw her application for withholding-only proceedings in order to challenge the legal basis of the second FARO and then be able to apply for asylum, withholding of removal, and relief under CAT in regular removal proceedings.

Because this contravention of process rendered the legal conclusion of the second FARO unreviewable before removal, Lopez makes an "initial showing of substantial prejudice." *Anwar*, 116 F.3d at 144. DHS's failure to follow the Section 238.1 removal procedures outlined in the regulations violated her right to due process.

IV.

No. 23-60248

Finally, we consider remedy.

Lopez was removed to Honduras on June 30, 2023. Under an ICE policy directive, "[a]bsent extraordinary circumstances, if an alien who prevails before the U.S. Supreme Court or a U.S. court of appeals was removed while his or her [petition for review] was pending, ICE will facilitate the alien's return to the United States if either the court's decision restores the alien to lawful permanent resident (LPR) status, or the alien's presence is necessary for continued administrative removal proceedings." U.S. Immigration and Customs Enforcement Policy Directive Number 11061.1, *Facilitating the Return to the United States of Certain Lawfully Removed Aliens* (Feb. 24, 2012), available at https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_pol icy_facilitating_return.pdf (last visited August 14, 2024).

The government suggests that this directive would not be implicated, because "further administrative proceedings appear unnecessary given that Petitioner voluntarily withdrew her applications for protection from removal." On this, we disagree with the government. As is discussed above, Lopez was prematurely placed in withholding-only proceedings in contravention of the procedures delineated in 8 C.F.R. § 238, and she canceled her withholding-only application only so that she could pursue judicial review on the substantive issue of whether her Louisiana conviction constituted an aggravated felony. In doing so, she has not forfeited her right to seek relief.

This court does not confer immigration benefits on Lopez, nor does it predict any eventual merits determination by an IJ or the BIA. However, because Lopez's original removal "was premised on a mistaken conclusion of law," we find that "judicial review would otherwise be frustrated" if Lopez were not given the opportunity to pursue the forms of relief she would

No. 23-60248

have been able to pursue had she not been placed, erroneously, in Section 238 proceedings. *Ramirez v. Sessions*, 887 F.3d 693, 707 (4th Cir. 2018).

Accordingly, we GRANT Lopez's petition for review, VACATE the order of removal, and REMAND to DHS with directions for the government to facilitate Lopez's participation in further proceedings, consistent with this opinion.